IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| CAPITOL PROPERTY MANAGEMENT CORPORATION, | ) ) ) | |
| Plaintiff | ) ) | Case No. 1:16-cv-00664-GBL-MSN |
| v. | ) ) | |
| NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, et al. | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff Capitol Property Management Corporation ("Capitol")'s Motion for Summary Judgment (Dkt. 35), and Defendants Nationwide Property & Casualty Insurance Company, Nationwide Mutual Insurance Company, and Nationwide Mutual Fire Insurance Company (together, "Nationwide")'s Motion for Summary Judgment (Dkt. 38). This case involves a breach of contract action concerning the scope of insurance coverage provided by Nationwide to Gunston Corner Condominium Association (the "Association"), a condominium association that hired Capitol to serve as property manager.

The main issue before the Court is whether the insurance policy (the "Policy") underlying this litigation requires Nationwide to pay Capitol for costs incurred by Capitol in connection with the terms of a Management Agreement entered into by Capitol and the Association. Specifically, the Court must determine what constitutes an "extra expense" under the Policy.

The Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary for four reasons. First, Capitol lacks standing to assert its claim for the Construction Management Fee because the Association never assigned the right to this

fee to Capitol. Second, Capitol has failed to meet its burden of proving that the Policy provides coverage for the Insurance Claim Processing Fee. Third, in any event, the Insurance Claim Processing Fee does not meet the definition of "extra expense." Fourth, Capitol's bad faith claims fail as a matter of law, as Virginia law does not recognize an independent cause of action for bad faith, and Capitol has not demonstrated that Nationwide breached the terms of the Policy.

## BACKGROUND

### A. Factual Background

#### 1. The Management Agreement Between Capitol and The Association

Capitol Property Management Corporation ("Capitol") is a Virginia Corporation that operates as a property management company. Gunston Corner Condominium Association (the "Association") is a condominium association with property interests in Lorton, Virginia. In November 2013, Capitol and the Association entered into a Management Agreement (the "Agreement") wherein Capitol would provide property management services to the Association for a monthly fee of $5,057.50.[1] (Dkt. 39-3 at 15). Under the Agreement, Capitol was responsible for, *inter alia*, the following: obtaining insurance coverage for the Association; obtaining estimates of costs for repair or replacement of damaged property; and for making

---

[1] II. SERVICES. Capitol Property Management shall render services and perform duties as follows:

(A) Property Management. The Agent will designate one (1) individual to serve as the property manager for [Gunston Corner] and will provide all reasonable resources to ensure a harmonious relationship between [Gunston Corner] and the assigned property manager. The Agent further agrees to replace the Property Manager assigned to [Gunston Corner] at the request by the Board once during the term of this agreement and agree to consider all additional, reasonable requests for reassignment of any property manager and will cooperate with the Board to resolve, to the extent possible, all conflicts prior to removal of any property manager. The Agent shall consult with [Gunston Corner] before changing the number and type of properties managed by the property manager to ensure that the property manager will be able to deliver good service to the [Gunston Corner] in accordance with this contract.

(B) Maintenance. The Agent will cause the common elements and [Gunston Corner] facilities of the Property which have been conveyed to [Gunston Corner], and any other property or improvements pertaining to the Property otherwise required to be maintained or available for use by [Gunston Corner], to be maintained according to and on the basis of such annual operating budgets, job standards and plan and schedule of operation as previously approved by the Board of Directors of [Gunston Corner].

(Dkt. 39-3 at 5).

2

claims with, and cooperating with, the property insurer related to such losses and claims.[2] *Id.* at 7. The Agreement went into effect on January 1, 2014. *Id.* at 4.

The Agreement also required the Association to make payments for certain expenses in addition to the flat monthly fee when the parties anticipated that there would be extra expenses. *Id.* at 13-14. With respect to insurance claims, the Association agreed to pay an additional fee of 10% of any insurance claim to Capitol for its claim processing as set forth in the Agreement. *Id.* at 14.

Furthermore, the Association agreed to pay a fee to Capitol for construction management of construction projects in excess of $20,000. *Id.* The Association agreed to pay Capitol an additional fee equal to 5% of the cost of any construction contract over $20,000. *Id.*

### 2. The Insurance Policy Issued by Nationwide

Nationwide issued Premier Businessowners Property Policy number ACP BPHK 2462876108 to the Association for the policy period from November 24, 2013 to November 24, 2014 (the "Policy"). (Dkt. 39-2). Nationwide agreed to provide insurance coverage to the Association in exchange for payment of a premium. *Id.* Specifically, the designated premises listed on the Policy consists of multiple condominium buildings in Lorton, Virginia, including the property located at 8238 Catbird Circle, Lorton, Virginia (the "Property"). *Id.* at 40. The

---

[2] (G) Insurance. Capitol Property Management shall cause to be placed and kept in force, as authorized by the Board of Directors of [Gunston Corner], and in accordance with the governing documents thereof, all forms of insurance pertaining to all common elements and [Gunston Corner] facilities to protect [Gunston Corner] and its Members, to the extent required by the governing documents of the Association, from perils that may include, but not be limited to . . . fire and extended coverage insurance . . .

. . . Capitol Property Management shall promptly investigate and make full written reports to the Board of Directors of the Association as to all accidents or claims for damage relating to the management, operation and maintenance of the common elements and Association facilities, including the estimated cost of repair or replacement, and shall cooperate and make any and all reports required by any insurance company in connection therewith.

Policy included an insuring agreement that provided coverage for direct physical loss to covered

property under Coverage A:

> **A. COVERAGES**
> We will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss.

*See* Dkt. 39-2 at 55, Form PB 00 02 04 11, p. 2.  Under the Policy, a fire qualifies as a Covered

Cause of Loss.

The Policy also includes certain Additional Coverages:

> **ADDITIONAL COVERAGES**
>
> \* \* \*
>
> h.      **Extra Expense**
>
> > (1) We will pay necessary "extra expense" you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or person property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.
> >
> > (2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:
> >
> > > a.   The portion of the building which you rent, lease or occupy; and
> > >
> > > b.   Any area within the building or on the site at which the described premises are located, if that area services, or is sued to gain access to, the described premises.
> >
> > (3) We will only pay for "extra expense" that occurs within the number of consecutive months shown in the Declarations for Extra Expense after the date of direct physical loss or damage.
> >
> > (4) This Extra Expense Additional Coverage is not subject to the Limits of Insurance.
>
> \* \* \*

*See* Dkt. 39-2 at 60, Form PB 00 02 04 11, p. 7.

In pertinent part, the Policy also includes certain defined terms:

9. **"Extra Expense"** means expense incurred:

> a. To avoid or minimize the suspension of business and to continue "operations":
>> (1) At the described premises; or
>> (2) At replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary locations.
>
> b. To minimize the suspension of business if you cannot continue "operations."
>
> c. To:
>> (1) Repair or replace any property; or
>> (2) Research, replace or restore the lost information on damaged "valuable papers and records;" to the extent it reduces the amount of loss that otherwise would have been payable under the Extra Expense Additional Coverage or the Business Income Additional Coverage.

*See* Dkt. 39-2 at 89, Form PB 00 02 04 11 p. 36.

### 3. The Fire

On May 27, 2014, a fire occurred at the Property, damaging approximately sixteen condominiums owned by the Association. (Dkt. 39-4). As a result of the fire, the Association made a claim under the Policy for fire loss at the Property. (Dkt. 1-1). Within two months of the fire, Capitol requested that Nationwide pay the 10% Insurance Claim Processing Fee that the Association had agreed to pay under the Management agreement. (Dkt. 39-6 at 16:25-17:3).

Nationwide, after reviewing the Policy and the claim for the Insurance Claim Processing Fee, determined that there was no coverage for the fee that the Association had agreed to pay Capitol. (Dkt. 39-7 at 5-7). By letter dated July 2, 2014, Nationwide denied Capitol's claim on the grounds that the fee was not part of the insurance contract and did not constitute direct physical loss or damage as required by the insuring agreement under Coverage A in the Policy. *Id.* Nationwide accepted the portion of the claim made by the Association for direct physical loss to the Property and made final payment on October 23, 2015. The total amount of the claim was $2,509,550.09, consisting of the following expenses:

(a) Building Damages: $1,756,580.96
(b) Emergency Repairs: $181,047.89
(c) Demolition and Debris Removal: $83,948.13
(d) Recoverable Depreciation: $194,838.01
(e) Ordinance and Law Coverage: $293,135.10

(Dkt. 39-8).

On or about December 23, 2015, Capitol, through a public adjuster, notified Nationwide that the Association had assigned to it the claim for the 10% Insurance Claim Processing Fee and provided a copy of the assignment from the Association. (Dkt. 39-9 at 19:16-20; 30:2-4). Subsequently, on February 3, 2016, Nationwide issued a second denial letter, reaffirming its denial of coverage under the Policy for the Insurance Claim Processing Fee on the grounds that the fee did not constitute direct physical loss or damage to covered property. (Dkt. 39-10). Nationwide also stated that the fee did not qualify for Additional Coverage as an "extra expense" under the terms of the Policy. *Id.*

### 4. The Assignment

On November 19, 2015, the Association executed an Assignment of Right ("the Assignment") in favor of Capitol, allowing Capitol the right to pursue a claim against Nationwide for the 10% Insurance Claim Processing Fee provided in the Agreement. (Dkt. 39-11 at 6-7). The Assignment did not assign the Association rights with respect to the Construction Management Fee provided for in the Property Management Agreement. *Id.*

### 5. Procedural Posture of the Instant Action

On May 4, 2016, Capitol filed a lawsuit in the Circuit Court for the County of Fairfax, Virginia. (Dkt. 1-1). Capitol demanded a judgment against Nationwide in the amount of $400,000 in compensatory damages as a result of Nationwide's alleged breach of contract, for failing to pay Capitol's claim for the Insurance Claim Processing Fee and the Construction

Management Fee. *Id.* ¶ 45. The Complaint alleges one count of breach of contract involving rights of an assignee (Count I); in the alternative, one count of breach of contract involving the beneficial owner of a cause of action (Count II); and, also alternatively, one count of breach of contract involving a third-party beneficiary of a contract (Count III). *Id.* ¶¶ 38-58. In the Complaint, Capitol alleges that the Insurance Claim Processing Fee and the Construction Management Fee fall within the "extra expense" coverage of the Policy. *Id.* ¶¶ 9, 12.

Nationwide removed the case to the Eastern District of Virginia on June 14, 2016. (Dkt. 1). The parties filed Cross-Motions for Summary Judgment on February 21, 2017. (Dkts. 35, 38). The Court has considered the parties' briefs, and acknowledges that the parties quibble over facts that are not material to the disposition of this case. At this stage of litigation, the key issue is whether the Insurance Claim Processing Fee and the Construction Management Fee, which are both owed to Capitol under the Agreement between Capitol and the Association, are covered under the Policy as "extra expenses." This is a legal conclusion that requires the Court to interpret the terms of the Policy. If the fees are covered by the Policy, then Capitol is entitled to judgment as a matter of law. If the fees are not covered by the Policy, then Nationwide is entitled to judgment as a matter of law.

The parties' motions are now properly before the Court.

## STANDARD OF REVIEW

### A. Fed. R. Civ. P. 56—Summary Judgment

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*; *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citations omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Where parties file cross-motions for summary judgment, courts consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392–93 (4th Cir. 2014) (citation and internal quotation marks omitted).

**B. Virginia Rules of Policy Interpretation**

In resolving this issue, the court must consider established principles of Virginia law regarding the interpretation of insurance policies. When interpreting such agreements, courts determine the parties' intent from the words used in the policy. *Va. Farm Bureau Mut. Ins. Co. v. Williams*, 677 S.E.2d 299, 302 (Va. 2009). The policy's provisions "must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." *Id.* When a disputed policy term is unambiguous, the court must apply its plain meaning as written. *Id.* "However, if disputed

policy language is ambiguous and can be understood to have more than one meaning, [the court must] construe the language in favor of coverage and against the insurer." *Id.*

## ANALYSIS

The Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment for four reasons. First, Capitol lacks standing to assert its claim for the Construction Management Fee because the Association never assigned the right to this fee to Capitol. Second, Capitol has failed to meet its burden of proving that the Policy provides coverage for the Insurance Claim Processing Fee. Third, in any event, the Insurance Claim Processing Fee does not meet the definition of "extra expense." Fourth, Capitol's bad faith claims fail as a matter of law because Virginia law does not recognize an independent cause of action for bad faith, and Capitol has not demonstrated that Nationwide breached the terms of the Policy.

### A. Capitol Lacks Standing To Assert A Claim For Payment of The Construction Management Fee

The Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment because Capitol lacks standing to assert its claim for the Construction Management Fee. Capitol is not a party to the insurance contract at issue and has no legal interest vested in the subject policy. Therefore, in the absence of a proper assignment of rights, Nationwide has no legally enforceable obligation to Capitol. In this case, significantly, Capitol has no assignment with regard to the 5% Construction Management Fee. (Dkt. 39-11 at 6-7). The assignment only pertains to the Insurance Claim Processing Fee. *Id.*

To have standing, a plaintiff must demonstrate (1) injury in fact that is concrete and actual or imminent, (2) a causal connection between the injury and the (acts) complained of, and (3) a likelihood that the court can provide redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560-61 (1992). The injury-in-fact element requires that the plaintiff "suffer an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent." *Friends of the Earth, Inc.* v. *Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th. Cir. 2000). Furthermore, the Supreme Court of Virginia has stated: "[t]he general rule at common law is that an action on a contract must be brought in the name of the party in whom the legal interest is vested, and this legal interest is ordinarily vested only in the promisee or promisor; consequently, they or their privies are generally the only persons who can sue on the contract." *Cemetery Consultants, Inc. v. Tidewater Funeral Directors Ass'n, Inc.*, 254 S.E.2d 61, 62 (1979).

Here, the assignment between the Association and Capitol is very specific, and explicitly discusses the Insurance Claim Processing Fee:

> WHEREAS, the aforementioned management contract included a liability of [The Association] to [Capitol] for an "Insurance Claim Processing" fee, as set forth at Section IV.27 (Management Contract – Reimbursable Expenses), at p. 10- 11 of the Management Contract between the parties, which relevant provision sets the aforementioned at "10% of claim received";' and
> * * *
> WHEREAS, [The Association] and [Capitol] contend that the "insurance claim processing fee" is or should be covered by [Gunston Corner]'s insurance.
> * * *
> [The Association] hereby assigns and transfers to [Capitol] any right conferred upon [The Association] by [The Association]'s insurance coverage to the 10% insurance claim processing fee referenced in the Management Contract between [The Association] and [Capitol].

The Assignment does not convey any rights to Capitol regarding potential insurance coverage for the Construction Management Fee. To hold otherwise is to ignore the plain language of the assignment from which Capitol claims its rights derive. Accordingly, it is clear that Capitol has not been assigned any rights with respect to the Construction Management Fee.

Capitol erroneously relies on Federal Rule of Civil Procedure 17 to grant it the right to pursue the claim for the Construction Management Fee in this case. Rule 17 states as follows:

> **(a) Real Party in Interest.**
> **(1) Designation in General.** An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought:

10

(A) an executor;
(B) an administrator;
(C) a guardian;
(D) a bailee;
(E) a trustee of an express trust;
(F) a party with whom or in whose name a contract has been made for another's benefit; and
(G) a party authorized by statute.

Fed. R. Civ. P. 17(a). Here, however, Capitol conflates Rule 17's real party in interest concept with standing to sue. Rule 17 does not create standing, it merely addresses in whose name certain types of actions may be maintained. *See Kent v. N. California Reg'l Office of the Am. Friends Serv. Comm.*, 497 F.2d 1325 (9th Cir. 1974) ("Rule 17(a) does not give them standing; 'real party in interest' is very different from standing."). Rule 17 provides that an action must be brought in the name of the real party in interest. Fed. R. Civ. P. 17(a). To be a real party in interest, however, a party must still have a substantive right to sue, which Capitol does not possess with regard to the Construction Management Fee. *See Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78 (4th Cir. 1973) (Rule 17 requires that the action be brought by a "person who possesses the right to enforce the claim").

Capitol may have an interest in the Association receiving payment from its insurer that would help it meet its contractual obligation to pay Capitol for services provided, but it does not have a substantive right to sue under the Nationwide Policy, although Capitol may be generally interested in the outcome of an insurance dispute between the Association and Nationwide. Without substantive rights under the Policy, it necessary follows that Capitol lacks standing to pursue the claim for the Construction Management Fee.

Capitol attempts to rely upon its status as agent for the Association to manufacture a substantive right to sue under the Policy. However, Capitol's status as an agent does not provide it with the right to enforce the policy at issue on behalf of itself. Because Capitol lacked

authority to even enter into a contract for itself under the Property Management Agreement, Capitol did not have the right to pursue a claim under it. *See* Dkt. 42-2 at 3 ("All legally binding instruments, specifically including, but not limited to contracts, shall be executed by the Board and made in the name of the [the Association] . . .").

Capitol also maintains that it has a substantive right under Virginia law as the "beneficial owner" of the claim pursuant to Virginia Code § 8.01-13. However, the Virginia Supreme Court has held that this statute does not apply in cases where there is no valid assignment. *See Kelly Health Care, Inc. v. Prudential Insurance Co. of Am.*, 309 S.E.2d 305 (1983). Here, because there was clearly no assignment with regard to the Construction Management Fee, Capitol cannot pursue that claim as its alleged "beneficial owner."

Capitol's argument also ignores the third party beneficiary doctrine, which already provides for a non-party standing to sue if certain conditions are met. In order to be a third party beneficiary, it must be clear on the face of the policy that Nationwide and the Association intended that the contract benefit Capitol. *See American Bankers Ins. Co. of Florida v. Maness*, 101 F.3d 358 (4th Cir. 1996) (internal citations omitted) (no intent to benefit the bankruptcy estate where "no mention of the estate appeared on the policy"); *Radosevic v. Virginia Intermont College*, 651 F. Supp. 1037 (W.D. Va. 1987) ("Virginia law also indicates that the four corners of a contract evidence whether contracting parties clearly and definitely intended to directly benefit a third party.") The Policy does not mention Capitol and does not suggest that the parties intended to confer any benefit upon Capitol when the insurance contract was executed. Consequently, Capitol is clearly not a third party beneficiary under the Nationwide policy and therefore cannot sue Nationwide absent a proper assignment.

Lastly, with respect to the issue of standing, Capitol argues that Nationwide has waived its right to challenge Capitol's right to sue as a "real party in interest" by not raising it earlier. This argument is without merit, as lack of standing cannot be waived and can be challenged at any stage of litigation because it relates to the jurisdiction of the Court. *See Pfizer v. Teva Pharmaceuticals USA, Inc.*, 803 F. Supp. 2d 409, 421 (E.D. Va. 2011). Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment because Capitol lacks standing to assert its claim for the Construction Management Fee.

### B. Capitol Has Not Met Its Burden of Proving That The Policy Provides Coverage for the Insurance Claim Processing Fee

The Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment because Capitol has failed to meet its burden of proving that the Policy provides coverage for the Insurance Claim Processing Fee. Virginia law draws a distinction between the burden of proof for proving coverage and the burden of proof for demonstrating the applicability of an exclusion in an insurance policy. "Under Virginia insurance law, the insured bears an initial burden to establish a *prima facie* case that coverage should be triggered. In other words, the burden is on the policyholder at the outset 'to bring himself within the terms of the policy.'" *SunTrust Mortg., Inc. v. AIG United Guar. Corp.*, 800 F. Supp. 2d 722, 731 (E.D. Va. 2011), *aff'd sub nom. SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 508 F. App'x 243 (4th Cir. 2013) (internal citations omitted). Only after an insured establishes a *prima face* case that its claim is within a policy's coverage grant does the burden shift to an insurer to prove that an exclusion precludes coverage. *Id.*

Here, Capitol argues that "Nationwide's broad insuring language created an 'all-risk' or 'multi-peril' policy." (Dkt. 41 at 11). However, the Policy's primary insuring agreement –

13

Coverage A.1. – is located on the second page of the Policy and provides: "[Nationwide] will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss." *See* Dkt. 39-2 at 55, Form PB 00 02 04 11, p. 2. The Policy goes on to differentiate between two types of "Covered Property," the building itself and business personal property – A.1.a. and A.1.b. *Id.* Thus, the primary insuring agreement provides coverage for direct physical loss to the building and business personal property, which is the cost to replace or repair the damaged property. For Capitol to meet its initial burden under the primary insuring agreement then, it must prove that the Insurance Claim Processing Fee is for direct physical loss to the building or business personal property.

The Insurance Claim Processing Fee is an indirect and non-physical loss that is a result of a tangential management agreement between the Association and Capitol. The Insurance Claim Processing Fee is not a direct physical loss to the building. The fee is not a direct physical loss to business personal property. Accordingly, Capitol fails to meet its initial burden of proof under the Policy.

The Policy also includes certain "Additional Coverages." *See* Dkt. 39-2 at 57-60, Form PB 00 02 04 11, p. 4-7. One of these additional coverages is for "extra expenses." *Id.* at 60. As previously mentioned, the term "extra expense" under the Policy means:

> expense incurred:
>> a. To avoid or minimize the suspension of business and to continue "operations":
>>> (1) At the described premises; or
>>> (2) At replacement premises or at temporary locations, including relocation expenses and costs to equip and operate the replacement or temporary locations.
>> b. To minimize the suspension of business if you cannot continue "operations."
>> c. To:
>>> (1) Repair or replace any property; or

14

> (2) Research, replace or restore the lost
> information on damaged "valuable papers and
> records;" to the extent it reduces the amount of
> loss that otherwise would have been payable
> under the Extra Expense Additional Coverage or
> the Business Income Additional Coverage.

*Id.* Therefore, to qualify as an "extra expense," the Insurance Claim Processing Fee must: (1) come within the auspices of "extra expense" as defined in the Policy; and, (2) have been incurred to aid in keeping the Association's business operational. However, the duties Capitol undertook pursuant to the Property Management Agreement with respect to the Insurance Claim Processing Fee, were not related to minimizing the suspension of the Association's business in the event of a loss, nor were they related to keeping the Association operational. Instead, the duties included "investigat[ing] and make full written reports" on the claims and "cooperat[ing] and mak[ing] any and all reports required by any insurance company." (Dkt. 39-3 at 4). Hence, the Agreement was an outsourcing of administrative tasks related to the processing of the insurance claim. Although it was the Association's own decision to shift its administrative duties to a third-party management company, those costs cannot be passed on to Nationwide because Nationwide did not agree to cover expenses related to outsourcing contractually obligated responsibilities.

The tasks performed by Capitol related to the Insurance Claim Processing Fee completely overlap with the Association's own "Duties in the Event Of Loss Or Damage" under the Policy. The Policy requires the Association to assist Nationwide in the event of a loss, including providing an inventory of the damage and claimed costs associated therewith and cooperating with any investigation and settlement. *See* Dkt. 39-2 at 79, Form PB 00 02 04 11, p. 26. The Association's decision to outsource its duties under the Policy to Capitol does not render the cost of doing so a necessary "extra expense." Moreover, the Policy does not contemplate payment

for the insured, either on its own or through a third party, to perform its duties to assist Nationwide in processing the insurance claim as required under the Policy. Nationwide has met its coverage obligations under the insurance contract and it is entitled to judgment as a matter of law, and Capitol has not met its burden of bringing the Insurance Claim Processing Fee within the "extra expense" coverage in the Policy. Consequently, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment because Capitol has failed to meet its burden of proving that the Policy provides coverage for the Insurance Claim Processing Fee.

### C. The Insurance Claim Processing Fee Does Not Qualify As An "Extra Expense"

The Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment because in any event, the Insurance Claim Processing Fee does not meet the definition of "extra expense." Capitol argues that the Policy includes two "extra expense" coverages – one under the "Additional Coverages" that is limited by the definition of "extra expense" in the Policy, and another coverage provision under the Loss Payment provisions of the Policy that is not limited by the definition of "extra expense." Both of these arguments miss the mark.

With respect to the first argument, the Policy also includes certain Additional Coverages, which were previously noted:

**ADDITIONAL COVERAGES**

* * *
h.      **Extra Expense**

(1) We will pay necessary "extra expense" you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or person property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

(2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

    a. The portion of the building which you rent, lease or occupy; and

    b. Any area within the building or on the site at which the described premises are located, if that area services, or is sued to gain access to, the described premises.

(3) We will only pay for "extra expense" that occurs within the number of consecutive months shown in the Declarations for Extra Expense after the date of direct physical loss or damage.

(4) This Extra Expense Additional Coverage is not subject to the Limits of Insurance.

\* \* \*

*See* Dkt. 39-2 at 60, Form PB 00 02 04 11, p. 7. Capitol's argument only succeeds if the Insurance Claim Processing Fee is considered an "extra expense" under the Policy.

In a similar case, the Fifth Circuit Court of Appeals held that a property management company's fees for handling an insurance claim do not fall within the Extra Expense Coverage in a property insurance policy. *Id.* In *GBP Partners, Ltd. v. Maryland Casualty Co.*, 505 F. Appx 389 (5th Cir. 2013), GBP hired a property management company to manage its properties. *Id.* at 391. After a loss resulting from a hurricane, GBP negotiated a new management agreement with the property management company, wherein GBP would pay the property management company to handle insurance claims resulting from the hurricane damage. *Id.* at 394. This is tantamount to the agreement executed by Capitol and the Association.

GBP made a claim for the additional management fees related to the insurance claim, contending that the fees incurred with respect to the property management company it contracted

with were necessary expenses to aid in the repair and insurance claims process. The property insurer, Maryland Casualty, denied the claim for the fees as an "extra expense," arguing that such fees were not necessary to obtain the repairs or to negotiate the insurance matters. *Id.*

The Fifth Circuit ruled in favor of Maryland Casualty, stating that GBP had "offered no evidence explaining what portion of the fees directly related to making emergency repairs and securing recovery from insurance claims . . . . GBP can recover as extra expense *only* costs necessary to avoid a suspension of operations." *Id.* The Court held that the "extra expense" provision covers extra expenses associated with "a suspension of operations" or "extra expense[s] necessary to *avoid* the suspension of operations." *Id.* at 389. The Court rejected GBP's contention that the management fees were necessary to manage the repair process, stating that there was no evidence "tying the fees directly to [GBP's] efforts to prevent a suspension of [GBP's] operations." *Id.*

The Fifth Circuit's analysis is applicable here. As previously noted, Capitol's obligations under the Property Management Agreement to "investigate and to make full reports" and to "cooperate with insurers" do not qualify as expenses incurred to avoid the suspension of Association's business operations, nor were they necessary to aid in the repair process. Consequently, the Insurance Claim Processing Fee does not fall within the definition of an "extra expense" covered under the Additional Coverage for Extra Expense in the Policy.

Additionally, Capitol argues that the Insurance Claim Processing Fee is comparable to the fifteen percent "overhead and profit" Nationwide paid to Belfor – the general contractor who made the repairs to the damaged building. This contention also misses the mark. The Insurance Claim Processing Fee was to compensate Capitol to "investigate and make full reports" and to "cooperate" with the Association's insurers in the event of an insurance claim. In contrast, the

general contractor's overhead and profit fees were part of the cost of repairing the damaged building and were covered as part of the direct physical loss under Coverage A.

With regard to the argument premised on the Loss Payment provision, this provision merely informs an insured how a covered loss is to be paid. Section (9)(b) of the Loss Payment provision sets forth how any amount due under the Additional Coverage for extra expense is to be calculated once coverage is established:

> 5. **Loss Payment**
>
> In the event of loss of damage *covered* by this policy:
>
> * * *
>
> (9) Business Income and Extra Expense:
>
> * * *
>
> > (b) We will determine the amount of "extra expense" based on:
> >
> > > (i) all expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage occurred. The following will be deducted from the total of such expenses:
> > >
> > > > i.   the remaining salvage value of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and
> > > >
> > > > ii.  any "extra expense" that is paid for by other insurance,
> > >
> > > (ii) all necessary expenses that reduce the "business income" loss that otherwise would have been incurred.
>
> * * *

Dkt. 39-2 at 80, Form PB 00 02 04 11, p. 27.

The definition of "extra expense" is incorporated into the Loss Payment provision and the loss therefore must meet the definition of "extra expense" before the Court can reach the Loss Payment provisions in the Policy, because "extra expense" is a defined term in the Policy (the definition is incorporated into Section (9)(b) of the Loss Payment provisions). Here, the Insurance Claim Processing Fee does not meet the definition of "extra expense." Thus, Capitol

never reaches the Loss Payment provisions to calculate payment because the Insurance Claim Processing Fee is not a covered "extra expense." Consequently, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment because in any event, the Insurance Claim Processing Fee does not meet the definition of "extra expense."

### D. Nationwide Is Entitled To Judgment As A Matter of Law on Capitol's Bad Faith Claim Under Virginia Code § 38.2-209

The Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment because Capitol's bad faith claims fail as a matter of law, as Virginia law does not recognize an independent cause of action for bad faith, and Capitol has not demonstrated that Nationwide breached the terms of the Policy. Virginia Code § 38.2-209 provides that an insured may recover costs and reasonable attorney fees if the insurer's failure or refusal to provide coverage was not in good faith. Importantly, however, § 38.2-209 does not create a separate and independent cause of action for bad faith. Bad faith is only a source of additional recovery on a breach of contract claim against the insurer. *See, e.g., Massachusetts Bay Ins. Co. v. Decker*, 7:11-CV-00342, 2012 WL 43614, at *1 (W.D. Va. Jan. 9, 2012); *Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F.Supp.2d 630 (E. D. Va. 2009). "A judgment against the insurer acts a condition precedent to any claim of bad faith in Virginia[.]" *U.S Airways, Inc. v. Commonwealth Ins. Co.*, No. 03-587, 2004 WL 1094684, at *23-26 (Va. Cir. Ct. May 14, 2004).

Here, Capitol has failed, as a matter of law, to establish any breach by Nationwide. Because a judgment against the insurer is a prerequisite to recovery under a bad faith theory, the Court is precluded from awarding judgment to Capitol on this Count. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for

Summary Judgment because Capitol's bad faith claims fail as a matter of law, as Virginia law does not recognize an independent cause of action for bad faith, and Capitol has not demonstrated that Nationwide breached the terms of the Policy.

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary for four reasons. First, Capitol lacks standing to assert its claim for the Construction Management Fee because the Association never assigned the right to this fee to Capitol. Second, Capitol has failed to meet its burden of proving that the Policy provides coverage for the Insurance Claim Processing Fee. Third, in any event, the Insurance Claim Processing Fee does not meet the definition of "extra expense." Fourth, Capitol's bad faith claims fail as a matter of law, because Virginia law does not recognize an independent cause of action for bad faith, and Capitol has not demonstrated that Nationwide breached the terms of the Policy.

Accordingly, it is hereby

**ORDERED** that Plaintiff Capitol Property Management Corporation's Motion for Summary Judgment (Dkt. 35) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants Nationwide Property & Casualty Insurance Company, Nationwide Mutual Insurance Company, and Nationwide Mutual Fire Insurance Company (together, "Nationwide")'s Motion for Summary Judgment (Dkt. 38) is **GRANTED**.

**IT IS SO ORDERED.**

ENTERED this _5th_ day of June, 2017.

_/s/_
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
6 / 5 / 2017

21